**MAJESTIC INTERNATIONAL CORPORATION, Plaintiff,**

v.

**LUMAL SALES CO., Inc., Defendant.**

United States District Court
S. D. New York.
Nov. 19, 1959.

William V. Homans, New York City, Gale L. Marcus, Chicago, Ill., and Arthur J. Homans, New York City, for plaintiff.

Jesse Cohen, New York City, for defendant.

RYAN, Chief Judge.

Plaintiff has moved for leave to serve an amended complaint and for an injunction during the pendency of this suit restraining the defendant from infringing upon the trade mark and trade name of plaintiff, and from importing and marketing tape recorders or products bearing the name "Grundig" and from interfering with plaintiff's contractual rights under an agreement with Grundig Radio-Werke G.m.b.H (German Company).

The motion to serve the amended complaint presents no problem; the motion is granted (Rule 15(a), 28 U.S.C.A.). The application for injunctive relief is deemed made with the complaint so amended. The complaint now pleads three separate counts—Count 1 alleges a claim for alleged infringement of a trade mark and trade name; Count 2 alleges a claim for alleged unfair competition; and Count 3 alleges a claim said to have arisen out of defendant's alleged unlawful interference with a distributorship or contract manufacturing agreement plaintiff avers it had and still has with Grundig Radio-Werke.

Although it is clear that plaintiff did, on September 11, 1954, enter into an agreement with Grundig Radio-Werke (which was effective as of August 1, 1954), plaintiff has not submitted the agreement on these motions and our only knowledge of even a part of its contents is gained from an affidavit of plaintiff's treasurer. She sets forth what she describes as "the pertinent provisions" of the agreement, and reveals portions of it which concern "Territory", "Period of Validity", "Items covered by this agreement", "Distributorship", "Activity of the distributor", "Use of Trade Marks", "Terms of Delivery" and "General provisions". Such of these disclosed provisions (and there is no justification for secrecy of any part of it in light of the nature of plaintiff's claims) as are pertinent to the instant motion provide:

1. Grundig appoints the plaintiff as its sole and exclusive distributor for the "United States of America and all its territories, inclusive Canada and the Philippine Islands."

2. "The distribution shall be done by the distributor under his own name and for his own account."

3. The agreement runs from August 1, 1954 to July 31, 1957 and, subject to certain conditions not presently material, "shall be renewed automatically thereafter from year to year unless notice is given by either party by registered mail at least six months prior to the expiration of any renewal year."

4. The distributorship is limited to "radio receiving sets, portable radio receiving sets and combinations of same with tape recorders and/or record changers, their spare parts and accessories, manufactured by Grundig."

5. The distributor undertakes to market these items within the assigned territory to the best of his ability, to advertise the complete Grundig line specified, to set up a repair shop and maintain a stock of spare parts.

6. The distribution shall be made under the name "Grundig-Majestic" and Grundig undertakes to secure such registration. The use of this mark—by both Grundig and the distributor—shall continue "only during the validity of this agreement and only for the items covered", thereafter both undertake "to liquidate the trade-mark."

Plaintiff by this suit challenges the right of the defendant to employ the name "Janrus Grundig" in its advertising or to market in the United States "the Janrus recorder" because it bears the mark "Grundig" molded into the plastic case of the instrument. Plaintiff contends that such a use of the "Grundig" mark by the defendant is an unlaw-

ful invasion of its rights in the mark; a wrongful appropriation and capitalization of plaintiff's good-will; and that their use of the name "Grundig", either with another name or by itself is not only an infringement of this plaintiff's trade mark and trade name but also an act constituting unfair competition.

The plaintiff's right to the injunctive relief now sought, and indeed to any ultimate and final relief, must rest upon the validity of its claim that it now owns and has exclusive right in the United States to use the names and marks "Grundig" and "Grundig Majestic" by reason of the fact that it is a contract manufacturer and exclusive distributor of "Grundig" products; that it was the first to use the name "Grundig" and "Grundig-Majestic" in interstate commerce in the United States and has continuously so used the names since August, 1954.

It appears undisputed that no "Grundig" products were sold in the United States prior to 1951; that commencing then and continuing for a three year period, until about August, 1954, only a retail radio store imported for its own inventory one model of the "Grundig" produced radio and during this entire period marketed but $40,000 of this article. It was at this time that plaintiff made the agreement, which we have heretofore described. With plaintiff's importation of the "Grundig" products, the volume rapidly increased to a total amount of approximately $60,000,000 in the subsequent five years—1954 to 1959. This expansion flowed in no small measure from plaintiff's active and well directed marketing efforts and expenditures in advertising and promotion of the products. It is upon this, primarily, that plaintiff claims it has a property right in and to the name "Grundig" in the United States.

The plaintiff alleges that the entire line of the "Grundig" tape recorders, excepting a transcribing and dictating machine known as the "Stenorette", was added on September 19, 1957 to the agreement plaintiff had with Grundig (under date of September 11, 1954). "Grundig" has but recently placed upon the European market a new miniature battery operated type tape recorder which it has called the "Niki". It is the "Niki" which has become the golden apple of distraction in this suit, which plaintiff admits it has never distributed.

There are at least two authorized representatives of "Grundig" in the United States—Majestic International Corporation, the plaintiff, with its activities limited to musical instruments, radios, phonographs and Hi-Fi recording equipment; and DeJur Amsco Corporation, which sells "Grundig" machines, particularly the "Stenorette". DeJur Amsco since April 10, 1955 has had the exclusive franchise in the United States for the "Stenorette".

As of the date of this application for temporary injunctive relief, plaintiff had not received or marketed the "Niki" machine in the United States. It states that the "Niki" has "to date been released for sale only in the European market; the American counterpart of which plaintiff has placed an initial order of 10,000 units, is still in the process of manufacture in accordance with plaintiff's specifications. * * *". The specifications, in so far as the "Niki" is concerned, provide principally for the use of the American type battery and for the use of English instead of German wording and lettering. Then, too, they include accompanying descriptive and instruction literature in English, stickers bearing model and serial numbers to be imprinted with "Grundig-Majestic" and name plates on the front with the mark "Grundig-Majestic".

But, the defendant has, in the meanwhile, purchased the European marketed "Niki" abroad, imported it to the United States, removed a plastic label with the name "Niki" on it, and replaced it with its own trade name "Janrus". The name "Grundig" is molded on the top of each instrument and cannot be removed without damaging the case. There is no question that the "Niki" machines defendant is marketing are true and gen-

uine "Grundig" instruments produced and intended by that manufacturer for the European market; there has been no palming off of a fraudulent or spurious counterpart of the actual German produced "Grundig"-manufactured "Niki". The seed of the enterprise of defendant has been rooted in the fact that "Grundig" has adopted the business policy of marketing its products on the European market at a lower price than that asked for on the American market. Defendant purchasing the "Grundig" "Niki" in the European version at prevailing European prices is therefore able to sell at a figure more comparable to the lower European market price than the plaintiff's American version of the "Grundig" "Niki" (after it is finally produced according to plaintiff's specifications).

Note should be made, too, that by letter under date of July 31, 1959 the "Grundig" Verkaufs (Export Sales) wrote the defendant demanding that it forthwith cease its advertising of the "Niki" under the name of "Janrus" and stated that

> "We should like to draw your attention to the fact that Messrs. De-Jur Amsco Corporation, Northern Boulevard at 45 St., Long Island City, 1, N.Y. are sole representatives for the sale of our Tape Recorder "Niki" in the USA."

Although the original agreement of September 11, 1954 (in so far as we are informed) provided Grundig appoints plaintiff "sole and exclusive distributor" in the United States, its territories, Canada and the Philippines, it is limited in products definitely specified and provides that

> "The inclusion of the other products of the Grundig line, such as tape recorders * * * shall be subject of a later settlement."

This was extended, plaintiff avers, to tape recorders other than "Stenorette" "in or about August or September,

1957", however the document by which this was accomplished is not before us. The only writing we have from "Grundig" on the subject of plaintiff's right of distributorship of the "Niki" machine, is dated August 19, 1959 addressed "To whom it may concern" stating that plaintiff is "our authorized distributor for the United States of America for the sale of 'Grundig' products in the category of radios, radio-phonograph combinations and tape recorders bearing our name 'Grundig'" and giving power of attorney to plaintiff to protect the trademark "Grundig" and good-will "in proceedings relating to our 'Niki' tape recorder" against the defendant and others.

It is established of record that on September 3, 1954, Grundig Radio-Werke G.m.b.H (German company) 37 Kurgartenstrasse, Fuerth, Bayern, Germany, filed in the United States Patent Office the trade mark "Grundig" for Radio Receivers and parts thereof; Television Receivers and parts thereof; Television Cameras; apparatus for sound recording by wire or tape; Magnetic and Static Loudspeakers, in Class 21. The application for registration recited that the mark had been first used March, 1949; in commerce December 1952, and that the applicant was the owner of German Reg. No. 606,482, dated April 11, 1952. The mark was registered on April 10, 1956 as No. 624,842.

The mark as so registered did not contain or embrace, or was it coupled with the name "Majestic". Although plaintiff contends that this name "Majestic" was omitted by inadvertence, we are not so persuaded by the evidence now before us. This mark has not been assigned or transferred by the original registrant—Grundig Radio-Werke—to the plaintiff or to any one else.

■ We have concluded that plaintiff is not entitled to the injunctive relief it now seeks.

■ The product defendant markets is in truth and in fact a genuine

"Grundig" product, it may lawfully sell it anywhere under the "Grundig" mark (Burlington Mills Corp. v. Roy Fabrics, D.C., 91 F.Supp. 39, affirmed 2 Cir., 182 F.2d 1020). The defendant by offering this genuine "Grundig" product has in no shape, manner or form unlawfully interfered with plaintiff's contractual relations with "Grundig" (Cf. Passaic Print Works v. Ely & Walker Dry Goods Co., 8 Cir., 105 F. 163, 62 L.R.A. 673; Hamilton Watch Co. v. Benrus Watch Co., 2 Cir., 206 F.2d 738).

Plaintiff has no exclusive right to the use of the name "Grundig" in the United States and is not the owner of the name by use, or otherwise. The probability of plaintiff's success in this suit resting on the showing now made is indeed remote and there is no showing of irreparable harm and damage.

Motion denied; settle order.